**LEAD ATTORNEYS IN CHARGE FOR
PLAINTIFF AND CLASS MEMBERS**
James X. Bormes (*pro hac vice*)
Catherine P. Sons (*pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan (Admitted *pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff

**LOCAL COUNSEL:**
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TERRI HAYFORD, individually and on behalf of all others similarly situated, | Case No.: 15 cv 2643 JTT |
| Plaintiff, | **[UNOPPOSED] MOTION FOR ORDER GRANTING APPROVAL OF COLLECTIVE ACTION SETTLEMENT, CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES, APPROVAL OF COLLECTIVE ACTION NOTICE AND FORMS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| MAGELLAN HEALTH, INC. | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 3

II.   BACKGROUND .................................................................................................. 4

      A.    Magellan Health, Inc. ................................................................................. 4

      B.    Terri Hayford ............................................................................................. 4

      C.    "Off the Clock" Allegations ....................................................................... 4

      D.    "Rounding" Allegations ............................................................................. 5

III.  PROCEDURAL POSTURE ................................................................................. 5

IV.   SUMMARY OF PROPOSED SETTLEMENT TERMS ...................................... 6

      A.    Gross Settlement Amount ........................................................................... 6

      B.    Net Settlement Fund ................................................................................... 6

      C.    Formula for Distribution to Participating Collective Members ................... 7

      D.    Released Claims ......................................................................................... 7

      E.    Settlement Administration .......................................................................... 7

V.    THE PROPOSED COLLECTIVE ACTION SHOULD BE CONDITIONALLY
      CERTIFIED TO FACILITATE NOTICE TO PUTATIVE MEMBERS ........................ 9

VI.   THE COURT SHOULD PRELIMINARILY APPROVE THE COLLECTIVE
      ACTION SETTLEMENT .................................................................................. 11

      A.    Strength, Risk, Expense, Complexity, and Duration of Further Litigation .......... 11

      B.    The Extent of Discovery and Stage of the Proceedings Support Settlement ........ 12

      C.    The Experience and Views of Counsel Supports Settlement Now ...................... 13

      D.    The Proposed Settlement Is a Reasonable Compromise of Claims ..................... 13

      E.    The Proposed Settlement Agreement Does Not Grant Preferential
      Treatment ................................................................................................. 14

            1.    Award of Attorneys' Fees and Expenses, and Service Award for
            Plaintiff ........................................................................................... 14

VII.  CONCLUSION ................................................................................................. 15

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................12

5

*Class Plaintiffs v. City of Seattle*,
6     955 F.2d 1268 (9th Cir. 1992) ...........................................................................11

7 *Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ..............................................................................9
8

9 *Edwards v. City of Long Beach*,
    467 F.Supp.2d 986 (C.D. Cal. 2006) ..................................................................10

10
*Ellis v. Naval Air Rework Facility*,
11     87 F.R.D. 15 (N.D. Cal. 1980), *affd.* 661 F.2d 939 (9th Cir. 1981) .....................13

12 *Gillings v. Time Warner Cable LLC*,
    No. CV 10–5565–AG, 2012 WL 1656937 (C.D. Cal. Mar. 26, 2012)...................14
13

14 *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ...........................................................................11

15
*Hill v. R & L Carriers, Inc.*,
16     690 F.Supp.2d 1001 (N.D. Cal. 2010) ..................................................................9

17 *Hipp v. National Life Ins. Co.*,
    252 F 3d 1208 (11th Cir. 2001) ..........................................................................10
18

19 *Hoffman-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)..............................................................................................9

20
*Jacobs v. California State Auto. Ass'n Inter–Ins. Bureau*,
21     No. C 07–0362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ...................15

22 *Jones v. Agilysys, Inc.*,
    No. C 12-03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 10, 2014) .....................15
23

24 *Khanna v. Inter–Con Sec. Sys., Inc.*,
    No. CIV S–09–2214 KJM GGH, 2012 WL 4465558 (E.D. Cal. Sept. 25,
25     2012) ..................................................................................................................11

26 *Linney v. Cellular Alaska Partnership*,
    151 F. 3d 1234 (9th Cir. 1998) ...........................................................................14
27

28 *Lynn's Food Stores, Inc. v. United States*,
    679 F. 2d 1350 (11th Cir. 1982) .........................................................................11

*McElmurry v. U.S. Bank Nat. Ass'n*,
    495 F.3d 1136 (9th Cir. 2007) ...................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F. 3d 454 (9th Cir. 2000) ................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................14

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................13

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................15

*Sanchez v. Sephora USA, Inc.*,
    No. C 11–3396 SBA, 2012 WL 2945753 (N.D. Cal. Jul. 18, 2012) ......................10

*Shea v. Ryla Teleservices*,
    2012 WL 4210291 (E.D. Cal. 2012) .......................................................10

*Stanfield v. First NLC Fin. Servs., LLC*,
    No. C 06–3892 SBA, 2006 WL 3190527 (N.D. Cal., Nov. 1, 2006) ......................10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................15

*Tarlecki v. Bebe Stores, Inc.*,
    No. C 05–1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) ......................15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..................................................................11

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009)....................................................9

**Statutes**

29 U.S.C. § 216(b) ............................................................................................9

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ................................... *passim*

**Other**:

*Newberg on Class Actions* (4th 2002) § 14:6 ..................................................14-15

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Terri Hayford ("Plaintiff") submits this Motion on the grounds that Plaintiff and Defendant Magellan Solutions, Inc. ("Defendant") desire to completely resolve all issues, claims, and disputes related to this lawsuit. As further explained in the following Memorandum of Points and Authorities, the Parties successfully mediated the claims in this lawsuit and entered into a written settlement agreement.  Plaintiff accordingly moves this Court for an order granting:

(1)      Approval of a proposed settlement agreement on behalf of Plaintiff and a collective consisting of all persons who worked for Defendant as telephone-dedicated employees (Customer Services Representatives, or "CSR", however titled) who were compensated, in part or in full, on an hourly basis, for the time period of September 23, 2013 through December 7, 2016, and who are identified by Employee ID number on Exhibit A to the Settlement Agreement[1] ("Collective Action Settlement");

(2)      Certification of a collective action under 216(b) of the Fair Labor Standards Act for settlement purposes only;

(3)      Approval of the Notice of Collective Action Settlement and Claim Form;

(4)      Appointment of Plaintiff's attorneys as Collective Action Counsel;

(5)      Appointment of Plaintiff as the Collective Representative; and

(6)      Appointment of Dahl Administration, LLC to administer notice to putative Collective Action Settlement members as the Third-Party Administrator, which will inform them of the proposed Collective Action Settlement, and their rights to opt-in or object to the proposed terms.

---

[1] The Settlement Agreement is being submitted for *in camera* review pending the Court's ruling on the Parties' motion for leave to file the agreement under seal.

DATED this 19th day of May 2017.

/s/ James X. Bormes
James X. Bormes (*pro hac vice*)
Catherine P. Sons (*pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue, Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan (*pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After discovery including document production and depositions as well as arm's-length negotiations and a mediation, the Parties reached agreement to resolve all issues, claims, and disputes related to this lawsuit. Plaintiff therefore seeks approval of a proposed settlement on behalf of Plaintiff and a collective consisting of all persons who worked for Defendant at call centers located in Tempe, Arizona and St. Louis, Missouri in approximately 21 states[2] as telephone-dedicated employees (Customer Services Representatives, or "CSR", however titled) for the time period of September 23, 2013 through December 7, 2016 ("Collective Action Settlement").  Based upon the payroll data of Defendant, there are a total of 931 putative collective action members who worked at least one workweek of 40 hours or more during the relevant period, who collectively worked a total of 27,426 overtime workweeks, and who may potentially be entitled to some recovery under this Settlement (hereinafter referred to as "Members").

Subject to Court approval, the Parties have settled the claims in this lawsuit for the gross settlement amount of up to $725,000.00, which includes payments for service awards, attorneys' fees and costs, interest, liquidated and/or multiple damages, all costs of litigation and settlement administration, and any other costs, damages, or payments of any kind.  For purposes of settlement only, Plaintiff seeks certification of a collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA"), the appointment of Plaintiff's attorneys as Collective Action Counsel, the appointment of Plaintiff as the Collective Representative, and the appointment of Dahl Administration, LLC as Third-Party Administrator to administer notice to putative Collective Action Settlement Members, which will inform them of the proposed Collection Action Settlement, and their rights to opt-in to the proposed terms.

---

[2] Many of Defendant's employees worked from home.  Defendant's data indicates that the putative collective members who worked for Defendant's Arizona and Missouri call centers performed their work in 21 different states.

## II.   BACKGROUND

### A.   Magellan Health, Inc.

Magellan provides customer call centers to companies who desire to outsource the task of providing customer service representative to handle phone calls from a company's customer. Magellan operates a call center on Washington Road in Tempe, Arizona, and a call center in St. Louis, Missouri and employs telephone-dedicated customer service representatives in over 21 different states who handle phone calls regarding various medical authorization and insurance inquiries, among other things.

### B.   Terri Hayford

Plaintiff is a resident of Arizona. Defendant hired Plaintiff to work as an hourly, non-exempt customer services representative at Defendant's Tempe, Arizona call center from approximately June 2014 to November 2014. Her job duties included answering incoming customer service telephone calls and operating a computer.

### C.   "Off the Clock" Allegations

This lawsuit arises under the FLSA alleging that Defendant failed to pay Plaintiff and other similarly situated persons overtime pay for all time worked in excess of 40 hours per week. Plaintiff alleges that Defendant has a practice of requiring and/or permitting telephone-based hourly employees to work before the start of their scheduled shift time; and that Defendant knowingly required and/or permitted Plaintiff and other similarly situated employees to perform unpaid work before and after the start and end times of their shifts. Plaintiff alleges that Defendant was aware that Plaintiff and those similarly situated to her also performed work for Defendant on their break periods, for which they were not paid.

Defendant denies any liability or wrongdoing of any kind whatsoever associated with the claims alleged in Named Plaintiff's Complaint.  Specifically, Defendant denies that its pay practices failed to comply with the FLSA, or any other federal or state law.  Defendant further denies that the settlement shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification has been satisfied in this action, or that this action would be manageable or otherwise appropriate to be litigated as a class or collective action.  Should

the Court not approve Settlement Agreement, Defendant expressly reserves its right to oppose certification of the Action as a collective action.

**D.    "Rounding" Allegations**

Plaintiff alleges that the telephone-dedicated customer service representatives record time worked by entering it into electronic timesheets using an onsite timekeeping system.  Plaintiff alleges that the timekeeping system is configured to round each time entry to the nearest quarter hour. Plaintiff alleges that the rounding policy or practice has denied Plaintiff overtime compensation purportedly due. Defendant denies that its timekeeping system or pay practices failed to comply with the FLSA, or any other federal or state law.

**III.    PROCEDURAL POSTURE**

On December 29, 2015, Plaintiff filed a Collective Action Complaint against Defendant in the United States District Court for the District of Arizona. (ECF No. 1.) The complaint alleges that Defendant knowingly required or permitted Plaintiff "and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several computer software programs, reading company issued emails and instructions, and completing customer service calls." (ECF No. 1, ¶ 3.) The Complaint alleges violations of the FLSA for failure to pay statutorily-mandated overtime, and requests certification of and notice to a group of "[a]ll persons who worked for Defendant as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis at Magellan call centers at any time between December 28, 2012 and the present who did not receive the full amount of overtime wages earned and owed to them." (*Id.* ¶ 65.)

On February 26, 2016, Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint. (ECF No. 35.) On April 20, 2016, Plaintiff filed her Amended Collective Action Complaint correcting the name of Magellan entity named as the Defendant. (ECF No. 25.) On May 9, 2016, Defendant filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint. (ECF No. 26.)

On April 11, 2016, the Court ordered that discovery be completed by September 2, 2016, and Plaintiff's motion for conditional certification would be due by October 7, 2016. (ECF No. 19.) The Parties subsequently exchanged disclosures, Defendant responded to written discovery and produced timekeeping, payroll, and login data for Plaintiff, and two witnesses were deposed. On September 21, 2016, the Parties stipulated to a stay of proceedings to allow the Parties to engage in private mediation. (ECF No. 51.)  Additional depositions were deferred, and the Parties agreed to toll the statute of limitations for potential collective Members until after the Parties' mediation.

On February 21, 2017, the Parties filed a Notice of Settlement. (ECF No. 57.)  On April 28, 2017, in recognition that the outcome of this lawsuit is uncertain and that achieving a final result through litigation would require substantial additional risk, fact discovery, expert discovery, time, and expense, the Parties reached a final agreement to resolve all claims pertaining to, arising from, or associated with this lawsuit. (*See* Exhibit 1, Settlement and Release Agreement ("Settlement Agreement").)

## IV.     SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.     Gross Settlement Amount

The Parties have agreed – subject to the approval of this Court – to fully and finally resolve the claims in this action for a maximum gross settlement amount ("GSA") of $725,000. This amount comprises all payments to individuals contemplated by the Settlement Agreement, including payments for service awards, attorneys' fees and costs, interest, liquidated and/or multiple damages, all costs of litigation and settlement administration, and any other costs, damages, or payments of any kind. (Ex. 1, ¶ 1.2.)

### B.     Net Settlement Fund

After all Court-approved deductions to the GSA, including a reasonable service award, attorneys' fees, costs of litigation, and settlement administration, the remaining net settlement funds ("NSF") will be distributed to each individual consenting to join the Collective Action Settlement who timely submits his/her Claim Form ("Opt-In Plaintiff"). The Parties agree that 50% of the payment to each Opt-In Plaintiff shall constitute wages from which the employer's and

employee's applicable payroll taxes shall be withheld, and 50% of the settlement payment to each Opt-In Plaintiff shall constitute liquidated damages. (Ex. 1, ¶ 1.8.)

**C.**      **Formula for Distribution to Participating Collective Members**

Each Opt-In Plaintiff who worked two or more workweeks of 40 hours or more per workweek, by formula, will be allocated a *pro rata* share of the remaining NSF in proportion to the number of overtime workweeks each Opt-In Plaintiff worked as against the total number of overtime workweeks worked by all Members of the Collective Action Settlement. (Ex. 1, ¶ 1.7.) For example, if a settlement member worked 10 workweeks of 40 hours or more, that individual would receive $162.42.  If a settlement member worked 50 workweeks of 40 hours or more, that individual would receive $812.00.

**D.**      **Released Claims**

Plaintiff and Opt-In Plaintiffs will release all wage and hour claims made against Defendant, its affiliates and related companies, including any of these entities' predecessors and successors and, in their capacities as such, all of their present, past, and future directors, officers, employees, representatives, attorneys, insurers, reinsurers, agents, and assigns, as well as all of these entities' affiliates, parent or controlling corporations, partners, divisions, and subsidiaries (collectively "Released Entities"), alleged in this Lawsuit, including, but not limited to, any and all wage and hour claims under the FLSA; any and all wage and hour claims arising out of any state wage, minimum wage, or overtime laws; and any claims relating to unpaid wages, minimum wage, and overtime compensation against the Released Entities, relative to all such claims that arose prior to December 7, 2016.  (Ex. 1, ¶¶ 3.1, 3.2.)

**E.**      **Settlement Administration**

The Parties agree by mutual agreement that Dahl Administration, LLC will handle the administration of the Collective Action Settlement (including notice, receipt of claims, and processing and mailing of settlement payments to Opt-In Plaintiffs) as Third-Party Administrator. Defendant will provide the name and last known mailing address of each potential Opt-In Plaintiff. The Third-Party Administrator will thereafter update the address through the National Change of

Address Update database and then mail to each individual identified a Notice of Collective Action Settlement, a Claim Form, and a pre-printed, postage-paid return envelope. (Ex. 1, ¶¶ 2.2, 2.3.)[3]

The Claim Form requires of potential Opt-In Plaintiffs only a modest showing of eligibility to make a valid claim for participation in the Collective Action.  By signing the Claim Form, the potential Opt-In Plaintiff attests that she/he meets the definition of the Collective Action Settlement; namely, that she/he was a telephone-dedicated employee (Customer Services Representative, or "CSR", however titled), employed by Defendant during the time period from December 29, 2012 through December 7, 2016.  This modest showing not only increases efficiencies in administering the Collective Action Settlement without further burdensome validation of each claim, but allows the potential Opt-In Plaintiff to make a knowing determination of whether she/he meets the definition of the Collective Action Settlement, or to contact Plaintiff's counsel or the Claims Administrator if the potential Opt-In Plaintiff has questions. Timely return of the completed and signed Claim Form is the only step required for opting-in to the Collective Action Settlement and receiving the applicable distribution pursuant to the Settlement Agreement.

Within fourteen (14) days after Court's approval of the Settlement and conditional certification of the collective action for settlement, the Third-Party Administrator shall mail to each Member of the Collective Action the Class Notice attached hereto as Exhibit 2 and the Claim Form attached hereto as Exhibit 3.  The Third-Party Administrator will report the names of all timely Opt-In Plaintiffs to Collective Action Counsel and Counsel for Defendant.  The opt-in period shall be forty-five (45) days form the day of mailing.

Within fourteen (14) days after the close of the Opt-In Period, the Third-Party Administrator will: (1) mail each Opt-In Plaintiff his/her respective distribution check to their last known address as provided by the Opt-In Plaintiff in his/her completed Claim Form; (2) mail the approved service award to Collective Action Counsel; and (3) pay approved attorneys' fees, litigation expenses and costs to Collective Action Counsel via wire transfer. Following allocation

---

[3] The proposed Notice of Collective Action Settlement and Claim Form are attached hereto as Exhibits 2 and 3, respectively.

for Defendant's contribution to Plaintiff's and Opt-In Plaintiffs' payroll taxes, any remaining portion of the NSF for which a claim is not timely returned by an Opt-In Plaintiff or the expenses set forth above are paid shall remain the property of Defendant. (Ex. 1, ¶ 2.4.8.)

If any payments are returned by the postal service as undeliverable, the Third-Party Administrator will notify all Counsel of checks that are returned by the U.S. Postal Service, and will make a second and final attempt through skip-tracing to mail the returned check to the last known or updated address of the Opt-In Plaintiff. Checks that remain uncashed for a period of six months shall escheat to the state of the last known address where the Opt-In Plaintiff resides. (Ex. 1, ¶ 2.4.9.)

## V.   THE PROPOSED COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED TO FACILITATE NOTICE TO PUTATIVE COLLECTIVE MEMBERS

The FLSA authorizes an employee to bring a collective action "on behalf of similarly situated employees, but requires that each employee opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (citing 29 U.S.C. § 216(b)). Only those who affirmatively opt in by providing a written consent are bound by the results of the action. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). The Court may conditionally certify an FLSA suit as a collective action so that similarly-situated employees receive notice of the action and the proposed settlement, and are provided with an opportunity to opt-in to the settlement.  *See generally, Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) (noting that the FLSA requires courts to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."); *see also Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124 (E.D. Cal. 2009) ("Subject to final approval at a later date, conditional certification of a settlement class under the FLSA is appropriate.").

Although the FLSA does not define "similarly situated," most federal courts in this Circuit have adopted a two-tiered approach to make that determination on a case-by-case basis. *Hill v. R & L Carriers, Inc.*, 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010). The first step is the conditional

certification or notice stage, at which time the Court assesses whether potential members should be notified of the opportunity to opt-in to the action. *Sanchez v. Sephora USA, Inc.*, No. C 11–3396 SBA, 2012 WL 2945753, at *2 (N.D. Cal. Jul. 18, 2012). The second step is the final certification stage, which typically occurs following the completion of discovery, and, barring a settlement, is initiated by a motion for decertification by the defendant. *See Hipp v. National Life Ins. Co.*, 252 F 3d 1208, 1218 (11th Cir. 2001). The showing to conditionally certify a FLSA collective action has been described as "modest" and usually "requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Stanfield v. First NLC Fin. Servs., LLC*, No. C 06–3892 SBA, 2006 WL 3190527, at *2 (N.D. Cal., Nov. 1, 2006) (internal quotations and citations omitted). "Plaintiff need not show that [her] position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that [her] position was or is similar to those of the absent class members." *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006).

Here, the policies and practices were common among Plaintiff and all potential Opt-In Plaintiffs and they were all treated the same (*i.e.*, classified as non-exempt, paid per hour, and were telephone dedicated employees (Customer Services Representatives, or "CSR", however titled)). As such, the Parties, for purposes of the proposed Collective Action Settlement, have stipulated that this matter is appropriate for conditional certification under the FLSA, and accordingly request the Court to conditionally certify the Collective Action Settlement so that notice can be given to potential claimants.  Courts in this Circuit have granted conditional certification of FLSA collective actions for purposes of settlement where Plaintiff and putative collective members are similarly situated.  *See, e.g., Shea v. Ryla Teleservices,* 2012 WL 4210291, *3 (E.D. Cal. 2012) ("[F]or settlement purposes the Parties have stipulated that this matter is appropriate for conditional certification under the FLSA.  The Court agrees that the named plaintiffs and putative plaintiffs are similarly situated.").

## VI.    THE COURT SHOULD APPROVE THE COLLECTIVE ACTION SETTLEMENT

A settlement of private collective action claims under the FLSA requires court approval and will be approved only after the Court determines that the settlement is a "fair and reasonable resolution of a bona filed dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1353 (11th Cir. 1982). "Among the factors relevant to this determination are the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair." *Khanna v. Inter–Con Sec. Sys., Inc.*, No. CIV S–09–2214 KJM GGH, 2012 WL 4465558, at * 11 (E.D. Cal. Sept. 25, 2012). The Court also may consider whether the settlement includes an incentive award to Plaintiff and the amount of fees to be paid to counsel. *Id.*

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted).  Further, the law favors settlement, particularly in collective actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Approval is thus appropriate, and the Court should allow the Notice of Collective Action Settlement and the Claim Form to be disseminated.

### A.    Strength, Risk, Expense, Complexity, and Duration of Further Litigation

The Settlement Agreement was reached as a result of intensive arms-length negotiations between the Parties, and facilitated by an experienced, nationally recognized mediator, Hunter R. Hughes. While Plaintiff believes in the merits of her case, she also recognizes the inherent risks and uncertainty of litigation and understands the benefit of a settlement sum now as opposed to risking denial of collective action certification; and/or an unfavorable result on the merits on

11

summary judgment or at trial and/or on an appeal – a process which can take several more years to litigate.

Although Defendant has strong defenses against liability and damages, and believes Plaintiff will face several steep hurdles going forward should this matter not resolve, it is also mindful that there are risks and significant expenses associated with proceeding further in the case. The Parties have agreed to settle this lawsuit on the terms and conditions set forth in the Settlement Agreement in recognition that the outcome is uncertain, and that achieving a final result through litigation would require substantial additional risk, discovery, time, and expense.

**B.      The Extent of Discovery and Stage of the Proceedings Support Settlement**

Although discovery is not complete, settlement at this time is appropriate to avoid unnecessary drawn out costs of foreseeable, complicated discovery; particularly data and expert discovery. To date, the Parties exchanged disclosures, Defendant responded to written discovery and produced payroll data and call center information for Plaintiff and phone-based customer service representatives who worked in approximately 21 states, and two local witnesses were deposed. Should the case move forward, and litigation resume, the Parties will resume extensive discovery comprised of additional depositions, the retaining of wage and hour testifying experts, and complicated data analyses for the entire population identified for purposes of settlement.  It is anticipated that discovery will be followed by conditional certification proceedings and decertification proceedings including dispositive motion practice.

Plaintiff asserts that settlement of this action now will bestow substantial economic benefits to the Collective Action members, especially in light of the uncertainty regarding recovery and the costs of continued litigation. The proposed Collective Action Settlement before this Court comes only after this matter has been fully investigated by Counsel, as the Parties have thoroughly investigated and evaluated the strengths and weaknesses of their respective cases, and have engaged in sufficient discovery. This litigation has reached the stage where the Parties certainly have a clear view of the strengths and weaknesses of their cases sufficient to support the approval of the Settlement Agreement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

**C.     The Experience and Views of Counsel Supports Settlement Now**

The proposed Settlement was reached through a fair compromise of disputed claims arrived at through substantial exchange of information and data analysis followed by a full day of arm's-length negotiations before a respected and nationally-recognized mediator with expertise in the relevant field, Hunter R. Hughes.  Furthermore, James X. Bormes of the Law Office of James X. Bormes, P.C., Thomas M. Ryan of the Law Office of Thomas M. Ryan, P.C., and Michelle R. Matheson of Matheson & Matheson, P.L.C. (together, "Collective Action Counsel") each have significant experience in litigating overtime and other wage and hour class and collective cases, and have obtained certification in these types of cases. Likewise, Defendant's counsel, Mark Ogden and Cory G. Walker of Littler Mendelson, P.C. also are particularly experienced in complex wage and hour employment law matters and class and collective actions.

Experienced counsel, operating at arms-length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed Collective Action Settlement. Counsel for all Parties believe, in view of the costs, risks, and delay of continued litigation, balanced against the benefits of settlement, that settlement at this time represents a fair, reasonable, and adequate resolution. Views of counsel conducting litigation "are "entitled to significant weight" in deciding whether to approve a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *affd.* 661 F.2d 939 (9th Cir. 1981). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

**D.     The Proposed Settlement Is a Reasonable Compromise of Claims**

Based upon information exchanged, liability is contested on the basis that the Parties disagree that Plaintiff is similarly situated to the population of allegedly disadvantaged employees she seeks to represent. The overall assessment of claim viability, even assuming certification, presents several significant difficulties, including substantial costs – both in legal expenses and business interruption – of defending a statistical wage and hour claim involving both digitally stored data and the research of data archived in manual records. While Plaintiff is firmly convinced that work was permitted and performed off-the-clock and/or hours worked were improperly

rounded, this is not a given. Courts in this Circuit follow the federal rule and allow employers to round as long as the rounding policy is facially neutral and evenhandedly applied. *Gillings v. Time Warner Cable LLC*, No. CV 10–5565–AG, 2012 WL 1656937, at *5 (C.D. Cal. Mar. 26, 2012) (neutral rounding practices permissible since "net effect does not withhold wages").

In the face of these uncertainties, the Parties agree to a compromise of a claims made settlement of up to $725,000.00. A settlement is not judged solely against what might have been recovered had Plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The adequacy of the amount recovered must be judged as "a yielding of absolutes . . . [n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair." *Id.* at 628.  Accordingly, the proposed settlement value is not to be judged against a speculative measure of what might have been achieved and is well within the range of reasonableness; and should be granted approval. *Linney v. Cellular Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998).

**E.      The Proposed Settlement Agreement Does Not Grant Preferential Treatment**

No member of the Collective Action Settlement will be discriminated against under the terms of the proposed Settlement Agreement.  The proposed Settlement Agreement provides, subject to the Court's approval, a service award to Plaintiff in connection with the prosecution of this action, and allows that Collective Action Counsel be paid a fee of 33.33% of the gross amount of $725,000 plus costs of $20,000. The proposed Settlement Agreement does not condition the Collective Action Settlement on the Court's issuance of any such awards.

**1.      *Award of Attorneys' Fees and Expenses, and Service Award for Plaintiff***

Collective Action Counsel are requesting reimbursement of their litigation expenses and an award of fees – not to exceed 33.33% of the GSA, or an amount approved by the Court, and expenses not to exceed $20,000.  (Ex. 1, ¶ 1.6; see also, Ex. 4, ¶ 21; *Newberg on Class Actions*

(4th 2002) § 14:6 ("fee awards in class actions average around one-third of the recovery")).  Courts have discretion to award incentive fees to named representatives. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). These fees "are intended to compensate [collective] representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59; *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (in assessing the propriety of an incentive award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time the plaintiff expended in pursuing the litigation."); *Tarlecki v. Bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *5 (N.D. Cal. Nov. 3, 2009).

Here, the proposed service award is fair and reasonable. Collective Action Counsel may request on behalf of Plaintiff $7,500 for her time, effort, and risks undertaken for the payment of costs in the event this action had been unsuccessful. (Ex. 1, ¶1.5; Ex. 4, ¶ 20.).  *See, e.g.*, *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 108420, at *3 (N.D. Cal. Jan. 10, 2014) (preliminarily finding an award of $5,000 as incentive payment for each of the six named plaintiffs presumptively reasonable); *Jacobs v. California State Auto. Ass'n Inter–Ins. Bureau,* No. C 07–0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (noting that "a $5,000 [incentive] payment is presumptively reasonable").

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Collective Action Settlement for settlement purposes only, approve the Proposed Notice of Collective Action Settlement and Claim Form, appoint Plaintiff's attorneys as Collective Counsel, appoint Plaintiff as the Collective Representative, appoint Dahl Administration, LLC to administer notice to putative Collective Action Settlement members, and enter the proposed Approval Order attached hereto as Exhibit 5.  This Motion is unopposed by Defendant.

DATED this 19th day of May 2017.

| | |
|---|---|
| 1 | */s/ James X. Bormes* |
| | James X. Bormes (*pro hac vice*) |
| 2 | Catherine P. Sons (*pro hac vice*) |
| | LAW OFFICE OF JAMES X. BORMES, P.C. |
| 3 | Illinois State Bar No. 620268 |
| | 8 South Michigan Avenue, Suite 2600 |
| 4 | Chicago, Illinois 60603 |
| | (312) 201-0575 |
| 5 | jxbormes@bormeslaw.com |
| | cpsons@bormeslaw.com |
| 6 | |
| 7 | Thomas M. Ryan (*pro hac vice*) |
| | LAW OFFICE OF THOMAS M. RYAN, P.C. |
| 8 | Illinois State Bar No. 6273422 |
| | 35 East Wacker Drive |
| 9 | Suite 650 |
| | Chicago, Illinois 60601 |
| 10 | (312) 726-3400 |
| | tom@tomryanlaw.com |
| 11 | |
| | LOCAL COUNSEL: |
| 12 | Michelle R. Matheson #019568 |
| | MATHESON & MATHESON, P.L.C. |
| 13 | 15300 North 90th Street |
| | Suite 550 |
| 14 | Scottsdale, Arizona 85260 |
| | (480) 889-8951 |
| 15 | mmatheson@mathesonlegal.com |
| 16 | Attorneys for Plaintiff |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on May 19, 2017, I electronically transmitted the foregoing document

3

to all counsel of record via the Court's CM/ECF system, which will send notification of such filing

4

to the following at their e-mail addresses on file with the Court:

5

Mark Ogden
Cory G. Walker
6
Littler Mendelson, P.C.
2425 E. Camelback Road, Suite 900
7
Phoenix, AZ
85016-2907
8
mogden@littler.com
cgwalker@littler.com
9

10

11

/s/ James X. Bormes

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28